**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **VIRGINIA BEACH HIGH SCHOOL WATER POLO,**<br>A Virginia Nonstock Corporation,<br><br>**Plaintiff,** | ) | |
| v. | ) | Case No. ____________ |
| **JESSICA LINDSEY,**<br>In her individual capacity,<br><br>**and** | ) | JURY TRIAL DEMANDED |
| **CHRISTOPHER LINDSEY,**<br>In his individual capacity,<br><br>**and** | ) | |
| **KATHLEEN BRENNAN,**<br>**AKA KATHLEEN KOENIG,**<br>In her individual capacity,<br><br>**and** | ) | |
| **RHONDA MALUIA,**<br>In her individual capacity,<br><br>**Defendants.** | ) | |

## COMPLAINT

Comes now, your Plaintiff, Virginia Beach High School Water Polo ("VBHSWP" or the "Nonprofit"), by counsel, who moves for judgment against Defendants Jessica Lindsey, Christopher Lindsey, Kathleen Brennan aka

Kathleen Koenig, and Rhonda Maluia, and in support thereof, does respectfully assert as follows:

## NATURE OF THE CASE

1. This matter arises from Defendants' false association with VBHSWP creating confusion and deception as to their affiliation with the Nonprofit; Defendants' false and misleading descriptions of fact damaging VBHSWP's economic expectancy; Defendants' conversion of the Nonprofit's property; and Defendants' business conspiracy.

## PARTIES

2. Plaintiff Virginia Beach High School Water Polo is a Virginia nonstock corporation created in 2018 for the purpose of promoting water polo in Virginia Beach, Virginia.

3. Defendant Jessica Lindsey is an individual residing in Virginia Beach, Virginia. Ms. Lindsey served as the president of VBHSWP prior to resigning at the board's request.

4. Defendant Christopher Lindsey is an individual residing in Virginia Beach, Virginia. Mr. Lindsey is the husband of Ms. Lindsey. The Lindsey's sons formerly played water polo while attending high school in the Virginia Beach public school system.

5. Defendant Kathleen Brennan aka Kathleen Koenig is an individual residing in Virginia Beach, Virginia. Ms. Koenig's son formerly played water polo

while attending high school in the Virginia Beach public school system and she currently has a son playing and coaching.

6. Defendant Rhonda Maluia is an individual residing in Virginia Beach, Virginia. Ms. Maluia's son currently plays water polo while attending high school in the Virginia Beach public school system.

## JURISDICTION & VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff asserts a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, a law of the United States of America.

8. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's claims occurred in the City of Virginia Beach, Virginia, a territory included within those assigned to the Norfolk Division of the Eastern District of Virginia.

## BACKGROUND

9. VBHSWP offered its first season of water polo to 25 high school aged student athletes in the fall of 2018 at Virginia Beach Parks and Recreation ("VB Rec") facilities. The Nonprofit registered as a Virginia nonstock corporation at or around the same time.

10. Jessica Lindsey was a founding director of the VBHSWP board.

11. In 2019, VBHSWP purchased water polo goals at a cost of $7016.35. VB Rec permitted VBHSWP to store its goals at its Princess Anne, Great Neck, and Bayside facilities.

12. VBHSWP and VB Rec had a mutual understanding wherein VBHSWP stored its goals at VB Rec and operated a fall high school water polo league at VB Rec facilities (the "League"). VB Rec did not charge VBHSWP for pool time for its League.

13. Between 2018 to 2023 VBHSWP steadily grew in popularity. The amount of student athlete participants in the Nonprofit's league increased as it worked with Virginia Beach High Schools to expand high school sponsored club water polo within the region. VBHSWP's participating students tripled from approximately 25 to 75 during this time.

14. By 2024, the League featured seven teams. The increased participation enabled the Nonprofit to raise funds for game caps, practice caps, balls and game equipment.

15. VBHSWP also worked with American Water Polo ("AWP") – a nonprofit out of Pennsylvania – to obtain a certificate of insurance to host their league at VB Rec and other local venues. In addition to insurance, AWP assists with website hosting, coach and volunteer certifications.

16. In 2021, VBHSWP began offering high school travel water polo in addition to its League. By spring of 2023, VBHSWP created a travel team (the "Kraken"), to enable high school athletes to travel to the USA Water Polo Junior

Olympics. VBHSWP maintained separate budgets for the Kraken and its fall League.

17. While serving as the VBHSWP board president, Ms. Lindsey utilized her position for personal gain. She steered League awards to her son over other deserving athletes. After recognizing Ms. Lindsey's conflict of interest and requested her resignation, Ms. Lindsey resigned in November 2023.

18. After significant delay, Ms. Lindsey ultimately turned over VBHSWP equipment to the 2023-24 board. However, she never released her administration rights to VBHSWP's administrator email, which included organization files as well contact information for athletes, coaches, volunteers. After significant delay, Ms. Lindsey eventually turned over access to VBHSWP's website: virginiabeachwaterpolo.com.

19. In early 2024, Ms. Lindsey created a new private water polo travel team for the purpose of attending the USA Water Polo Junior Olympics (the "Tidewater Titans"). Whereas the Kraken was open to any Hampton Roads high school athlete, Ms. Lindsey kept the Titans private and exclusive.

20. Ms. Koenig, Ms. Maluia and the Lindseys all had sons on the Tidewater Titans team that attended the July 2024 Junior Olympics. During collaboration on the Titans participation in the Junior Olympics, Defendants reached a meeting of the minds to falsely accuse VBHSWP of financial misdeeds for the purpose of undermining its business relationships and standing in the

community. Destroying VBHSWP would enable Defendants to take control of water polo in Virginia Beach.

21. Notably, Ms. Lindsey worked as a swim team coach for Kellam High School which practiced at VB Rec. Ms. Lindsey used her position as coach to recruit student athletes away from the Kraken towards her private team. Ms. Lindsey, Ms. Koenig, and Ms. Maluia also used local social media channels to fundraise for the Tidewater Titans causing confusion between the private team and the Kraken.

22. On January 20, 2025, Ms. Koenig and Ms. Maluia sent a letter to a Virginia Beach High School official accusing VBHSWP of financial impropriety.

23. In March 2025, Ms. Maluia and Ms. Koenig met with Virginia Beach City Public School Student Activities Coordinator David Rhodes seeking to establish restrictions and controls on VBHSWP. Without basis, Ms. Maluia accused the Nonprofit of misappropriation of funds.

24. Throughout the spring of 2025, Ms. Koenig and Ms. Maluia continued accusing VBHSWP of financial misappropriation of funds. In direct contradiction to their specious allegations, VBHSWP received certification of its status as a nonprofit as well as accolades for its financial transparency.

25. In June 2025, Ms. Koenig, Ms. Maluia, Ms. Lindsey, and Mr. Lindsey circulated a letter accusing VBHSWP of pocketing over $13,000 in funds for personal gain, falsely claiming the Nonprofit refused to provide its financial records, and falsely accusing it of other financial impropriety. Although the

Defendants attempted to keep the author of the letter anonymous, the metadata of the circulated pdf of the letter reveals Chris Lindsey as the author. Both Ms. Koenig and Ms. Maluia circulated the letter on social media in furtherance of their scheme to destroy VBHSWP.

26. Defendants continued using knowingly false statements of financial wrongdoing to purposely harm VBHSWP's business relationships with Virginia Beach City Public Schools, VB Rec, student athletes, and the parents of student athletes. Ms. Lindsey used her position as swim coach to make accusations against VBHSWP to agents of VB Rec to further Defendants' purpose of harming VBHSWP's business relationship.

27. Defendants' false accusations caused Virginia Beach City Public Schools to discontinue their sponsorship of the VBHSWP League. The loss of sponsorship prevented VBHSWP from running its fall 2025 League at VB Rec, resulting in lost revenue of $20,940.

28. After successfully interrupting VBHSWP's ability to host a fall league at VB Rec, Ms. Lindsey organized her own fall Virginia Beach high school water polo league.

29. Ms. Lindsey used AWP – the same nonprofit that sponsors VBHSWP – to advertise her league. For 2026 registration on AWP's website, she used the name "2026 Virginia Beach High School Water Polo League" knowingly causing confusion between her private league and VBHSWP's League.

30. After discovering VBHSWP's rights to the domain name virginiabeachwaterpolo.com lapsed, Ms. Lindsey took control of the domain name and used it to directly traffic student athletes to AWP to register for her private league. Ms. Lindsey restored the same pictures and materials created by VBHSWP for its website and used it on its former domain name directly causing confusion that her private league was affiliated with VBHSWP. Ms. Lindsey had access to VBHSWP's website materials from her time on the VBHSWP board.

31. Ms. Lindsey's false designation caused significant confusion amongst student athlete families looking to sign up their children to VBHSWP's League. Multiple families reported mistakenly signing up for Ms. Lindsey's league on AWP after following the domain name and seeing the designation of Virginia Beach High School Water Polo League. For example, Mike Mason followed the domain name and ended up registering his child in Ms. Lindsey's league mistakenly believing he was registering with VBHSWP.

32. Ms. Lindsey also used VBHSWP's goals for her private league at VB Rec. Then, after VB Rec requested that her league obtain permission for its continued use of the goals, Ms. Lindsey refused to request permission from VBHSWP. Without resolution, VB Rec revoked its prior permission for VBHSWP to store its goals at its facilities and demanded that VBHSWP remove the goals.

33. Defendants' false accusation of misappropriation of funds against VBHSWP and Ms. Lindsey's refusal to obtain permission for the goals directly caused VB Rec's revocation of permission.

34. On August 20, 2026, Kathleen Koenig removed the VBHSWP goals from the VB Rec facilities without permission or authorization from VBHSWP. Ms. Koenig falsely impersonated her association with VBHSWP in order to remove the goals. Prior to their removal, VB Rec made Ms. Koenig aware that after the goals were removed they would be deemed unreturnable to the government facility. Ms. Koenig proceeded to remove the goals anyway, depriving VBHSWP of further use of their goals at VB Rec and further depriving VBHSWP of possession of the goals.

## COUNT I
## FALSE ASSOCIATION IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(A)(1)(A))

35. Section 43(a) of the Lanham Act prohibits the use in commerce of a false association likely to cause confusion concerning the source or affiliation of services.

36. Federal courts have repeatedly held that the internet is an "instrumentality of interstate commerce" and that the jurisdiction of the Lanham Act constitutionally extends to violations on the internet.

37. Ms. Lindsey used VBHSWP's established domain name, as well as its website content used under that domain name, to direct student athlete families intending to register with VBHSWP to register for her private league instead. Ms. Lindsey charges a fee for registration with her private league. As such, her false association with VBHSWP constitutes a use in commerce.

38. Ms. Lindsey also used the designation of "2026 Virginia Beach High School Water Polo League" on AWP's registration website for the purpose of creating a false affiliation with VBHSWP in order to receive VBHSWP's registrations.

39. Ms. Lindsey's actions on both VBHSWP's established domain name and on its sponsor's registration website generated confusion as to the actual source of her league and false affiliation with VBHSWP.

40. Ms. Koenig furthered Ms. Lindsey's private league's false association with VBHSWP by representing herself to VB Rec as a director of VBHSWP. Ms. Koenig's false association caused VBHSWP to incur additional expenses such as temporary goals to continue operating its League.

41. As a direct result of Defendants' false association, VBHSWP has suffered direct economic harm including loss of revenue of $20,940 from the 2025 fall season, $14,578 in lost revenue from 2026 registrations, and $16,624 from loss of ability to operate its League, as well as expected economic harm from future lost revenue of an additional $50,000.

42. Defendants' reckless indifference to Plaintiff's rights exhibits such malice as to imply a criminal indifference to their civil obligations, warranting punitive damages.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND EXPECTANCY

43. Prior to Defendants' interference, VBHSWP steadily grew business relationships with Virginia Beach City Public Schools, Virginia Beach Parks and Recreation, American Water Polo, and student athlete families in the Virginia Beach community.

44. VBHSWP had a business expectancy of approximately $49,126 in annual revenue to facilitate its operations as a nonprofit with the purpose of facilitating the growth of water polo in the City of Virginia Beach.

45. As a former director of VBHSWP, Ms. Lindsey knew of VBHSWP's business relationships and expectancies. Mr. Lindsey, Ms. Koenig and Ms. Maluia also had knowledge of VBHSWP's relationships as their sons played water polo with VBHSWP prior to joining Ms. Lindsey's private team and league.

46. Ms. Koenig and Ms. Maluia directly interfered with VBHSWP's relationship with Virginia Beach City Public Schools by falsely informing its officials that VBHSWP misappropriated funds in a January 2025 letter.

47. Mr. Lindsey and Ms. Lindsey directly interfered with VBHSWP's relationships with Virginia Beach City Public Schools, Virginia Beach Parks and Recreation, and American Water Polo by creating and promulgating a June 2025 letter falsely accusing VBHSWP of misappropriating funds.

48. Ms. Koenig and Ms. Maluia knowingly disseminated the Lindseys' June 2025 letter on social media causing additional interference with VBHSWP's relationships and discouraging student athlete families from registering with VHBSWP's League and travel team.

49. Defendants used the improper method of defamation to facilitate their tortious interference. Both the January 2025 and June 2025 letter contained knowingly false information accusing VBHSWP of misappropriation of funds.

50. As a direct result of Defendants' actions, VBHSWP directly lost $20,940 in revenue from the 2025 fall season, $14,578 in revenue from lost 2026 registrations, and $13,608 in raised costs to continue operations at VB Rec. VBHSWP will also incur lost future revenue in the amount of $50,000.00.

51. Defendants' reckless indifference to Plaintiff's rights exhibits such malice as to imply a criminal indifference to their civil obligations, warranting punitive damages.

## COUNT III
## CONVERSION

52. Ms. Koenig wrongfully exercised dominion of VBHSWP's goals by impersonating herself as a director of the VBHSWP board on August 20, 2026 while removing VBHSWP's goals from VB Rec facilities without consent or authorization by VBHSWP.

53. VBHSWP purchased the goals in 2019 and had the sole right to possession of the goals at the time Ms. Koenig wrongfully removed the goals from VB Rec facilities.

54. Ms. Koenig's conversion of VBHSWP goals has resulted in $16,624 in damages including the cost of replacement of the goals as well as the cost to acquire inflatable interim goals to continue League operations.

55. Defendants' reckless indifference to Plaintiff's rights exhibits such malice as to imply a criminal indifference to their civil obligations, warranting punitive damages.

## COUNT IV
## BUSINESS CONSPIRACY VIRGINIA CODE § 18.2-500

56. As a nonprofit organization, VBHSWP engages in the business of organizing a Virginia Beach high school water polo league and travel team with the purpose of providing access to and expanding the sport of water polo in the community.

57. Defendants conspired to destroy VBHSWP through the unlawful means of defamation, false association, and conversion. Defendants sought to destroy VBHSWP so they could run their own private water polo league in Virginia Beach without competition from the established nonprofit organization.

58. Defendants formed a meeting of the minds on their fall Junior Olympics trip with the Tidewater Titans. Their coordinated action of falsely accusing VBHSWP of financial misuse demonstrated their uniformed purpose of destroying VBHSWP.

59. Ms. Koenig and Ms. Maluia first exhibited coordinated action by contacting Virginia Beach City Public School officials in January 2025 accusing VBHSWP of financial misuse.

60. Mr. and Ms. Lindsey continued the coordinated action in furtherance of the conspiracy by creating the anonymous June 2025 letter with numerous knowingly false accusations of financial impropriety by VBHSWP.

61. Ms. Koenig and Ms. Maluia continued the coordinated action by promulgating the Lindseys' June 2025 letter on social media.

62. Ms. Lindsey furthered the conspiracy by using VBHSWP's website materials on its former domain name without authorization from VBHSWP, and using the false designation of "2026 Virginia Beach High School Water Polo League" on AWP's registration website causing source confusion and false affiliation.

63. Ms. Koenig furthered the conspiracy by falsely impersonating herself as a director of VBHSWP in order to remove its four goals from two separate VB Rec facilities, ultimately destroying the goals.

64. Pursuant to Virginia Code § 18.2-500(A), VBHSWP may recover three-fold damages sustained as a result of Defendants' conspiracy, as well as its reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgments in its favor against Defendants Jessica Lindsey, Christopher Lindsey, Kathleen Brennan aka Kathleen Koenig, and Rhonda Maluia;

B. Award Plaintiff money damages against Defendant Jessica Lindsey for false association in violation of the Lanham Act in the amount of

One Hundred Two Thousand One Hundred Forty-Two Dollars ($102,142.00);

C. Award Plaintiff money damages against Defendants Jessica Lindsey, Christopher Lindsey, Kathleen Brennan aka Kathleen Koenig, and Rhonda Maluia for tortious interference with business relationships and expectancy in the amount of Ninety-Nine Thousand One Hundred Twenty-Six Dollars ($99,126.00);

D. Award Plaintiff money damages against Defendant Kathleen Brennan aka Kathleen Koenig for conversion of Plaintiff's property in the amount of Sixteen Thousand Six Hundred Twenty-Four Dollars ($16,624.00);

E. Award Plaintiff money damages against Defendants Jessica Lindsey, Christopher Lindsey, Kathleen Brennan aka Kathleen Koenig, and Rhonda Maluia for business conspiracy in the amount of Three Hundred Forty Seven Thousand Two Hundred Fifty Dollars ($347,250.00);

F. Award Plaintiff punitive damages against each Defendant Jessica Lindsey, Christopher Lindsey, Kathleen Brennan aka Kathleen Koenig, and Rhonda Maluia in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) from each for a total amount of One Million Four Hundred Thousand Dollars ($1,400,000.00);

G. Award Plaintiff any and all reasonable attorney's fees, expert fees and costs, pursuant to Virginia Code § 18.2-500(A);

H. Award Plaintiff pre-judgment interest from the date of service of this Complaint until the date of judgment; and

I. Award Plaintiff any and all other relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

**Respectfully Submitted,**

**VIRGINIA BEACH HIGH SCHOOL WATER POLO**

By: _/***s/ Matthew J. Weinberg***____
Of Counsel

Matthew J. Weinberg, Esquire (VSB # 88664)
INMAN & STRICKLER, P.L.C.
575 Lynnhaven Parkway, Suite 200
Virginia Beach, Virginia 23452
Telephone: (757) 486-7055
Facsimile: (757) 431-0410
E-mail: mweinberg@inmanstrickler.com
*Counsel for Plaintiff*